**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathryn M. Mayer,<br><br>       Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>       Defendant. | No. CV-21-02021-PHX-DJH<br><br>**ORDER** |

Plaintiff Kathryn M. Mayer's Application for Disability Insurance Benefits ("DIB") by the Social Security Administration ("SSA") under the Social Security Act ("the Act") was denied. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial., The Court has reviewed the briefs (Docs. 13, 16, 2), the Administrative Record (Doc. 10, "R."), and the Administrative Law Judge's ("ALJ") decision (R. at 146-60) and affirms the ALJ's decision for the reasons addressed herein.

**I.     BACKGROUND**

Plaintiff protectively filed an application for DIB on August 7, 2018, for a period of disability beginning on May 30, 2018. (R. at 123). Plaintiff's claims were initially denied by an ALJ on August 5, 2020. (R. at 120-38). However, the Appeals Council remanded the case for further consideration on January 12, 2021. (R. at 139-41). Plaintiff testified at a second hearing before an ALJ on May 5, 2021. (R. at 56-85). The ALJ denied her claims on June 28, 2021. (R. at 146-60). On October 6, 2021,

the Appeals Council denied her request for review of the ALJ's decision.[1] (R. at 1-6). On November 29, 2021, Plaintiff filed this action seeking judicial review. (Doc. 1).

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon consideration of the medical records and opinions, the ALJ evaluated Plaintiff's alleged disability based on the severe impairments of obesity, scleroderma, Raynaud's disease, crest syndrome, status post open reduction and internal fixation (ORIF) clavicle resection, status post right carpal tunnel release, hypothyroidism, and right elbow lateral epicondylitis. (R. at 149).

Ultimately, the ALJ evaluated the medical evidence and opinions and concluded that Plaintiff was not disabled. (R. at 160). The ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 152). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b)" with certain function limitations and concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 153, 159-60).

## II.  LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the court must consider

---

[1] The second ALJ decision denying disability is the subject of this appeal.

- 2 -

the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 416.920(a)-(g). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. If so, the claimant is not disabled, and the inquiry ends. *Id*. Second, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. If not, the claimant is not disabled, and the inquiry ends. *Id*. Third, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four where the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

**III.    ANALYSIS**

Plaintiff raises three arguments for the Court's consideration: (1) the ALJ erroneously rejected Plaintiff's symptom testimony; (2) whether the ALJ properly considered the assessment of treating physician, Dr. Al-Khoudari, and (3) whether the ALJ erred at step five to properly determine a "significant range of work" Plaintiff could perform within the RFC limitations. (Doc. 13 at 1-2). Plaintiff also requests this Court to remand the case for an award of benefits. (*Id*. at 24-25).

**A. The ALJ properly evaluated Plaintiff's symptom and pain testimony.**

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons supported by substantial evidence to reject Plaintiff's symptom testimony. (Doc. 13 at 16-20). An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings regarding the Plaintiff's credibility are insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id*. (quoting *Lingenfelter*, 504 F.3d at 1040). Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his

credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ's decision accounted for Plaintiff's physical impairments encompassing obesity, scleroderma, Raynaud's disease, crest syndrome, status post open reduction and internal fixation (ORIF) clavicle resection, status post right carpal tunnel release, hypothyroidism, and right elbow lateral epicondylitis. (R. at 149). Plaintiff testified that she suffers from CREST syndrome—calcinosis, Raynaud's, esophageal dysmotility, sclerodactyly, and telangiectasia; however, she is only affected by the calcinosis, Raynaud's and sclerodactyly. (R. at 65). Plaintiff testified that these ailments cause poor blood circulation to the extremities, namely her fingers and toes, which cause her fingers from the palm to the tips to turn white, burn, tingle with a sensation of pins and needles, and turn a dark purple. (*Id.*) It causes a tightening of the skin and makes it difficult for her to bend her fingers. (*Id.*) Plaintiff claimed the condition is caused by stress and/or cold and the episodes occur six to seven times a day, last for fifteen to thirty minutes, and are quite painful until the blood starts to circulate again. (R. at 66, 76). Plaintiff further testified that she develops open sores on her fingertips, and she has calcified sores and scar tissue under her skin that is painful to the touch and makes it difficult for her to use her fingertips. (*Id.*) Plaintiff testified she can use her hands and fingers for an hour before she needs a break. (R. at 77). Plaintiff claimed she can sit for two to four hours, stand for two hours, and can walk an hour at a time. (R. at 70). Plaintiff stated she can lift ten pounds, drives three to four times a week, does light cleaning around the house, walks every day for exercise, visits with friends once a month, and has traveled out-of-state to visit family. (R. at 63, 70-71).

The ALJ considered the level of Plaintiff's medical issues and found that her "impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" (R. at 154). The ALJ then cited to specific examples in the record to support her findings. Plaintiff argues the ALJ failed to provide a connection between the medical evidence with any specific part of the Plaintiff's testimony that would demonstrate a lack

of credibility to support the ALJ's position. (Doc. 13 at 18). However, it is apparent from the record that the ALJ used a multitude of specific reasons that are supported by the evidence to discount the Plaintiff's symptom testimony. The ALJ acknowledged that Plaintiff was afflicted with multiple impairments, but found they were not as disabling as alleged. (R. at 154). The ALJ appropriately relied on medical evidence that did not corroborate the Plaintiff's allegations as only one reason to discount her testimony. Although this could not be the ALJ's sole consideration, it is a permissible one. *Burch*, 400 F.3d at 680.

Plaintiff's argument centers around her CREST syndrome and the Court will consider that medical evidence in its analysis. The ALJ's decision begins with a reference to Plaintiff's initial visit for her CREST impairments in April 2018. The examination found Plaintiff's joints to be normal with no soft tissue nodules and full range of motion including her wrists and fingers, but she exhibited cyanosis and calcinosis on some fingertips with a healed scar on her right middle finger and CNS of the toes. (R. at 154, 618). An MRI was taken of the right middle finger, and it was negative for osteomyelitis. (R. at 154, 618, 749). In May 2018, Plaintiff underwent surgery of her right hand and wrist to treat Raynaud's syndrome, carpal tunnel, and chronic ischemia of the right middle fingertip. (R. at 154, 69, 526-27, 532-33). During her postoperative examination in July 2018, Plaintiff's orthopedist observed full hand and wrist bilateral motion, pink and warm fingers on her right hand, no current vasospasm on the right hand and healed areas of ulcerations on her index and middle fingertips. (R. at 154, 524). The orthopedist's examination report showed that her left hand was "not very symptomatic," and her right hand was "doing much better" and "she no longer has episodes of pain," although she exhibited sensitivity to cold. (R. at 154, 524). Plaintiff's rheumatologist also conducted an examination post-surgery in June 2018 and observed normal joint findings with full range of motion and no synovitis and no cyanosis/clubbing/edema in her extremities. (R. at 154, 616). Despite the positive statements made to her doctor, Plaintiff testified that the surgical procedure did not help. (R. at 69).

Further examination in November 2018 reported that Plaintiff was "no longer having any issues with ulceration or wound formation." (R. at 154, 766). Examination of Plaintiff's left hand and wrist was described as "in good condition," and the right hand showed no ulcers or wounds; warm, pink, and well-perfused fingers, and she was able to make a tight composite fist. (R. at 154, 767). A January 15, 2019, examination noted that Plaintiff again reported the surgery helped, and again, there was no cyanosis/clubbing/edema in her extremities, normal joint findings, no swelling, tenderness or synovitis, and no soft tissue nodules; however, Plaintiff reported she gets sores on her fingers without significant infection. (R. at 155, 614). Plaintiff's blood pressure medication was also changed to treat the Reynaud's. (*Id.*) A second examination on January 22, 2019, reported that Plaintiff said, "she has not had any problems with ulceration of the fingertips for either hand." (R. at 763). Plaintiff's doctor observed that there was no acute swelling or synovitis, no areas of skin ulceration, fingertips were pink and warm on both hands. (R. at 764). In July 2019, an examination reported the change in medication should help with the Reynaud's and there were no new sores observed on Plaintiff's fingertips. (R. at 155, 745). A January 2020 examination did note a few fingertip sores and Plaintiff was prescribed Nitro skin ointment for the sores, but all joint examination findings were normal. (R. at 155, 743-44, 1154). Examinations from August 2020 and February 2021 did not report any fingertip sores or gangrene and Plaintiff was still using the skin ointment. (R. at 155, 1150-51, 1154). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3).

Although Plaintiff experienced improvements, the ALJ identified and considered all remaining allegations of her pain. As Plaintiff argued, she did not need to provide evidence of the severity of those symptoms, but the ALJ is also not required to believe every allegation of disabling pain. The ALJ also considered a consultative physical examination

in February 2019 that opined Plaintiff would be capable of light work. (R. at 155, 639-42). This examination noted that despite Plaintiff's cold hands, a wound on the right index finger and healed wounds on the left hand, with paresthesia to bilateral hands, Plaintiff was still able to manipulate her extremities to pick up small coins, screw a nut into a bolt, write without difficulty, and she denied the condition had a significant impact on her daily living activities. (R. at 155, 638-40). Given Plaintiffs ailments, the ALJ specified a series of postural and environmental restrictions within a job setting applicable to her when the ALJ made her findings of Plaintiff's RFC. The ALJ ultimately found that while Plaintiff could not return to her past relevant work, there were other jobs available that could comply with her needed physical accommodations. The ALJ's conclusion that the objective medical evidence does not fully support Plaintiff's allegations is reasonable. *See Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009) (reiterating that the substantial evidence standard of review is highly deferential). Furthermore, the ALJ tied her discussion of the medical evidence of Plaintiff's physical issues to the Plaintiff's claimed limitations from those impairments. The ALJ is not required to mechanically specify each allegation that every piece of medical evidence undermined. Grouping the medical evidence with the allegations they undermined was sufficient. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (restating that ALJs may explain their decisions with unideal clarity so long as their reasoning is reasonably discernible).

In consideration of Plaintiff's daily living activities, the ALJ noted that Plaintiff explained during her consultative exam that her impairments had no significant impact on her daily living activities. (R. at 156, 638). Plaintiff was able to provide her own personal care and grooming and was capable of performing light housework. (R. at 71, 156, 335-42, 638). Plaintiff testified that she drives three to four times a week, visits with friends once a month and travels out-of-state via airplane and motor vehicle to visit her family. (R. at 63, 71-72, 156). She reported that she walks every day for exercise and spends free time reading or playing card games and board games. (R. at 71, 156, 632). Plaintiff also testified in her previous hearing from July 2020 that she has a pool at her home that she relaxes in and was in the process of applying to volunteer at an animal shelter. (R. at 42). Plaintiff

further testified that her mother lives with her and she assists her mother with bathroom needs and self-care. (R. at 44). "Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Molina*, 674 F.3d at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine*, 574 F.3d at 694. Thus, the ALJ's finding that Plaintiff was not as limited as she alleged was reasonable.

Given the scope of the record, the ALJ properly relied upon objective medical evidence to find the Plaintiff's allegations were inconsistent with the record, the effectiveness of her treatments, and her daily activities to discount Plaintiff's symptom testimony. There is sufficient evidence present to enable the Court to reasonably discern the ALJ's conclusions are supported by substantial evidence. As stated previously, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. The ALJ provided specific, clear and convincing reasons to dismiss Plaintiff's symptom testimony and those reasons were supported by substantial evidence.

**B. The ALJ properly considered the medical opinion evidence of Dr. Al-Khoudari.**

Plaintiff's next argues that the ALJ erred in her assessment of Dr. Al-Khoudari's opinion. (Doc. 13 at 11-16). Plaintiff applied for disability benefits after March 27, 2017 and is subject to the new set of regulations for evaluating evidence from medical providers. *See* 20 C.F.R. § 416.920c. The new regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not to defer to or give specific weight to any medical opinions. The new regulations state:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph

>   (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c.[2]

The regulations define "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 416.913(a)(2). All "other medical evidence" that an ALJ considers as part of the Administrative Record is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3).

The new regulations also expand the definition of acceptable medical sources. "Medical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502 (d). Specifically, a "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title," and a "Licensed Physician Assistant" are considered acceptable medical sources "for impairments within his or her licensed scope of practice." *Id.* at (a). The ALJ must now articulate how persuasive they find all the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b).

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of

---

[2] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

- 10 -

medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. at 792.

Here, Dr. Al-Khoudair, Plaintiff's treating rheumatologist, submitted a check-box questionnaire regarding Plaintiff's limitations. (R. at 157, 651-54). Dr. Al-Khoudair opined that Plaintiff could sit for four hours and could stand and/or walk for about two hours in an eight-hour workday. (R. at 157, 653). Dr. Al-Khoudair's opinion suggested that Plaintiff could frequently lift ten pounds and occasionally lift twenty pounds, could constantly lift overhead, occasionally grasp, turn, or twist objects, and less than occasionally perform fine manipulation with her fingers. (R. at 157, 654). Curiously, although Dr. Al-Khoudair found Plaintiff had no problems with her attention, concentration, pace, or persistence due to medications, symptoms, etc., he then postulated that she would be off-task twenty percent of a workday due to concentration and attention issues and would only be seventy percent as efficient as an average worker due to difficulties with pace and persisting with tasks. (R. at 157, 652). Dr. Al-Khoudair also found it was "unpredictable" as to how many days Plaintiff would miss work per month due to medical issues. (R. at 654). The ALJ found these restrictions to be inconsistent with the record and conflicted with Dr. Al-Khoudair's own medical findings. (R. at 157). The ALJ discussed Dr. Al-Khoudair's clinical findings from 2019 and 2020 that showed Plaintiff exhibited normal joint examinations with full range of motion and no swelling, tenderness, no soft tissue nodules, no synovitis, and warm/dry skin. (R. at 157, 614, 743, 745-46, 1154, 1156). The ALJ further noted that Plaintiff was only seen by Dr. Al-Khoudair every six months for routine medication management, and during most appointments, he did not observe significant abnormalities

in Plaintiff's extremities, although he sometimes observed fingertip sores. (R. at 158, 614, 745-46). The ALJ also considered that Dr. Al-Khoudair's findings were inconsistent with Plaintiff's orthopedist, Dr. Frankel. (R. at 157, 763-64, 766-67). A January 2019 examination by Dr. Frankel found no areas of skin ulceration, no synovitis or swelling in Plaintiff's hands. (R. at 149, 155, 764). Her fingertips were pink and well-perfused, and she could make a tight composite fist. (R. at 149, 155, 157, 764, 767). Additionally, State medical consultants and examiners found that Plaintiff could occasionally perform fine manipulation while Dr. Al-Khoudair's opinion stated Plaintiff was limited to less than occasional. (R. at 99, 114-15, 156-57, 642, 654). While Dr. Al-Khoudair also opined limitations on Plaintiff's sitting, standing, and walking, the ALJ found nothing in the record that supported her inability to sit, stand or walk for eight hours in a workday and cited to Plaintiff's testimony that she walks five times a week for forty-five minutes as a form of exercise. (R. at 157-58, 653, 774). Plaintiff also reported in May 2020 that she used the treadmill and stationary bike multiple times a week. (R. at 1067). Considering the above observations, the ALJ found that Dr. Al-Khoudair's opinion lacked support in the medical record.

Plaintiff argues the ALJ's decision failed to articulate the consistency and supportability factors required by the new regulations and lacked support of substantial evidence. The Court disagrees. The Court finds that the ALJ cited to specific examples in the medical record that were inconsistent with Dr. Al-Khoudair's opinion of Plaintiff's limitations. The ALJ fully articulated how persuasive she found all the medical opinions from each source. It is apparent from the record that the ALJ provided substantial evidence to sufficiently support her decision. Plaintiff's arguments only offer alternative interpretations of the evidence, which the Court finds unpersuasive. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**C. The ALJ properly determined a "significant range of work" for Plaintiff to perform at step five.**

Plaintiff argues that once the ALJ found Plaintiff could not return to her past relevant work at step five, the burden shifted to the Commissioner to show a "significant range of work" was available in the national economy that she could perform. Plaintiff claims that the Commissioner failed to meet this burden. (Doc. 13 at 21-24).

When an ALJ has determined that a Plaintiff cannot perform their past relevant work, the burden shifts to the Commissioner to show that Plaintiff "can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. The Commissioner can meet this burden in one of two ways: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical–Vocational Guidelines ['the grids'] at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id*. at 1101 (emphasis omitted). For age purposes, there are three age categories: younger person (under age 50), person closely approaching advanced age (age 50–54), and person of advanced age (age 55 or older). 20 C.F.R. § 404.1563(c)–(e). The age of a disability claimant "should be considered at the time of the ALJ's decision." *Little v. Berryhill*, 690 F. App'x 915, 917 (9th Cir. 2017).

Here, while Plaintiff concedes that the grids do not apply, Plaintiff relies on *Lounsburry v. Barnhart*, 468 F.3d 1111, 1116-17 (9th Cir. 2006) and *Maxwell v. Saul*, 971 F.3d 1128, 1130-31 (9th Cir. 2020) to support her argument that the Commissioner, failed to meet the burden to provide for a significant range of work that Plaintiff could perform. (Doc. 18 at 9-11). In *Lounsburry*, the Ninth Circuit found that the claimant in that case had skills that transferred to one occupation within that claimant's RFC capacity, but one occupation did not constitute a significant range of work. *Id*. at 1117. Subsequently, the Court under *Maxwell* later held that two occupations did not constitute a significant range of work, and a 'significant range' must require more than two. *Id*. at 1130-31. Thus, Plaintiff in this case submits that because the ALJ identified only one job with significant numbers in the national economy that Plaintiff could perform, based upon the holdings in *Lounsberry* and *Maxwell*, one occupation does not satisfy the Commissioner's burden of showing a significant range of work available for Plaintiff to perform. Under certain

circumstances, Plaintiff would be correct in their conclusion; however, Plaintiff has failed to consider a significant factor in the Ninth Circuit's analysis under *Lounsberry* and *Maxwell*—the Plaintiff's age category.

In both Ninth Circuit cases, the claimants were 55 years of age at the time of the ALJ's decision, placing them in the 'person of advanced age' category. Turning to Plaintiff's case, she was 48 years old at the time of the ALJ's decision which placed her in the 'younger person' category. *Maxwell* is *only* applicable to those persons aged 55 or older in the 'advanced age' category. "*Maxwell* was interpreting a rule that applies only to 'individuals of advanced age,' defined as individuals who are fifty-five or older." *Segobia v. Kijakazi*, No. 20-55943, 2021 WL 4317349, at *2, n.1 (9th Cir. September 23, 2021) (citation omitted). Based upon this precedent, Plaintiff's argument is without merit. Plaintiff was 48 years old at the time of the ALJ's decision and not within the 'person of advanced age' category. Thus, the holdings in *Lounsberry* and *Maxwell* do not apply to her case.

Moreover, the VE had found that Plaintiff could perform three jobs at step five—furniture rental clerk with 53,000 jobs available in the national economy; usher with 5,000 jobs existing; and surveillance system monitor at 3,000 jobs. (R. at 80). These occupations more than total a sufficient number of jobs available in the national economy. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014) ("25,000 jobs meet the statutory standard."). The ALJ did not err at step five and properly found a significant range of work in the national economy that was available to Plaintiff to perform within her RFC determination.

## IV. CONCLUSION

The Court finds that substantial evidence supports the Commissioner's nondisability determination. Plaintiff's symptom testimony was appropriately discounted by specific, clear, and convincing reasons supported by substantial evidence, and the medical opinion evidence was properly considered. Additionally, no legal errors were committed at step five of the nondisability determination. Therefore, the Court finds that

substantial evidence exists to support the Commissioner's nondisability determination. Thus, the Court need not reach the merits of Plaintiff's request to remand for an award of benefits.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 24th day of February, 2023.

Honorable Diane J. Humetewa
United States District Judge